UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RANDY BEASLEY,

               Plaintiff,                         Case No. 2:22-cv-237

v.                                        Honorable Paul L. Maloney

GODFREY MERANDA et al.,

               Defendants.
_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Meden, Schroderose, Minthorn, Jeske, Binner, Leach, and Mohrman. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against remaining Defendants Meranda and Bressette. Plaintiff's retaliation claims against Defendants Meranda and Bressette remain in the case. Further, Plaintiff's motions to appoint counsel will be denied.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.

Plaintiff sues Defendants Registered Nurse Godfrey Meranda; Doctor Unknown Meden; Lieutenants Unknown Schroderose and Unknown Minthorn; Guards Unknown Jeske, Unknown Binner, and Unknown Bressette; Captain Unknown Leach; and Hearing Officer Thomas O. Mohrman.

Plaintiff alleges that on July 18, 2022, Defendant Meranda came to his cell in the morning to dispense his medication. However, Defendant Meranda told Plaintiff that if he did not pay her she would not give him his medication. Later that morning, Plaintiff asserts that Defendant Meranda came back to his cell after just having had sex with prisoners in B Unit. Plaintiff does not explain how he knew about Defendant Meranda's conduct with other prisoners.[1] Plaintiff alleges that Defendant Meranda again stated that if Plaintiff wanted his medication, he would have to pay her. Plaintiff refused. Defendant Meranda then falsified a misconduct on Plaintiff for threatening behavior and had Plaintiff placed on top-lock. Plaintiff attaches a copy of the misconduct report, in which Defendant Meranda states:

> During noon medication pass, the unit officer informed me that prisoner Beasley #631420 requested to speak to me. I entered his cell front and immediately he began yelling at me and accusing me of having his medication discontinued. I attempted

---

[1] Plaintiff claims that Defendant Meranda was subsequently arrested, charged, and taken to jail for her misconduct.

to explain I wasn't involved in the medication being discontinued. He continued to complain loudly from approximately 2 ft. away. . . .

(ECF No. 1-1, PageID.16.) Defendant Meranda also stated that Plaintiff told her he was a high ranking gang member, called her a "f\*\*ing bitch," and said that she did not know who she was messing with. (*Id.*)

After Plaintiff received the misconduct that Defendant Meranda had issued, Plaintiff states that he was not allowed to come out of his cell to shower and did not sleep or eat. On the same date, Meyers[2] came to Plaintiff's cell and called him a racially derogatory name and told him he did not have anything coming. (ECF No. 1, PageID.6, 9.)

Plaintiff states that Defendant Meden then came by his cell and told him that he was going to stop his mental health medication and asked Plaintiff why he did not pay Defendant Meranda. On July 19, 2022, Defendant Schroderose came to review Plaintiff on the misconduct that had been written by Defendant Meranda. (*Id.*, PageID.9.) Plaintiff filed a grievance on Defendant Meranda. (ECF No. 1-1, PageID.33.) In the grievance, Plaintiff concedes that he did sometimes refuse to take his medication. (*Id.*) Plaintiff's grievance was denied, and he appealed to steps II and III. In the step II appeal response, Patricia Lamb, RN, BSN, states:

> Grievant claims that a nurse "… lied to the doctor about me taking my medication so he can stop it … This nurse told me that … she was going get my meds stop and that there's nothing I can do about." Grievant acknowledges that he refused his medication on occasion but asserts that he was generally compliant re: taking it. Grievant refers to the nurse in question as "Nurse Meranda."
>
> Date of Incident is listed as 7/18/2022.
>
> Review of the prisoner health record reveals that multiple nurses have documented re: issues associated with grievant's restricted medication venlafaxine (Effexor), specifically their efforts to administer same. This documentation dates back to at

---

[2] In the body of Plaintiff's complaint, he identifies Meyers as "Defendant Meyers." (ECF No. 1, PageID.9.) However, when listing the Defendants in this action, Plaintiff did not list Meyers. As such, the Court does not address Meyers as a Defendant.

least December of 2021 and addresses issues related to grievant's episodic refusal of the Effexor as well as the manner in which he handled it and his behavior towards the nursing staff. None of these notes were entered by "Nurse Meranda." On 7/18/2022 the psychiatrist reviewed grievant's medical record and determined that his compliance with the prescribed medication regimen was poor. The psychiatrist discontinued the Effexor on that date. Grievant continues to be followed by Mental Health staff.

Grievant's claim is not supported. The psychiatrist's decision to discontinue the Effexor on 7/18/2022 was not associated with the nurse identified by grievant. Grievant is reminded that nurses are required to record medication refusals and any significant issues re: administration of restricted medication. The providers review this documentation and take action accordingly. Grievant is encouraged to discuss his medication concerns with Mental Health staff and to contact Health Care as needed.

(*Id.*, PageID.31.)

Plaintiff states that on July 22, 2022, Warden Huss pulled Plaintiff's ticket, but Plaintiff never received any explanation for why the paperwork had been pulled. Plaintiff states that Defendant Bressette lied and wrote a threatening behavior misconduct on the same day that the warden pulled the misconduct that had been written by Defendant Meranda. Defendant Bressette stated, "You thought you was going to get away with it, we got her back." (ECF No. 1, PageID.9.) Plaintiff states that Defendant Bressette was talking about Defendant Meranda. Defendant Schroderose reviewed the misconduct and stated that he knew the misconduct was not right, but "so what." (*Id.*)

Plaintiff filed health care requests seeking to be placed back on his medication on August 4, 2022, August 8, 2022, August 12, 2022, August 17, 2022, and August 19, 2022. (ECF No. 1-1, PageID.24–28.) On August 18, 2022, Plaintiff received responses stating that his medication was stopped because the risk of treatment outweighed the benefit and because Plaintiff had been non-compliant with signs of misuse. (*Id.*, PageID.24, 27.)

4

On September 10, 2022, Defendant Jeske falsified a misconduct on Plaintiff for insolence, stating, "I got your bitch ass." (ECF No. 1, PageID.10.) The misconduct report is attached to Plaintiff's complaint and includes a statement by Defendant Jeske:

> While conducting a cell search of D-4, I heard loud shouting coming form the shower pit around stall #7 to "Get that bitch out of my cell. Don't touch my stuff, bitch!" Upon further investigation, the loud shouting came [from] stall #7 and was determined to be 631420 Beasley. Prisoner continued shouting as I approached the stall [around] 3 ft away. This caused a disruption in the showering process and caused a delay.

(ECF No. 1-1, PageID.18.) Plaintiff was found guilty by Defendant Minthorn following a hearing. (*Id.*, PageID.19.) Plaintiff's appeal was denied by the Deputy Warden on October 11, 2022. (*Id.*, PageID.21.)

On September 20, 2022, Defendant Binner falsified a misconduct accusing Plaintiff of calling her a "dumb bitch." (ECF No. 1, PageID.5.) Defendant Jeske falsely testified that she heard Plaintiff shouting the derogatory name while she was performing a cell search and Plaintiff was in the shower. Defendant Minthorn found Plaintiff guilty based on the report, and Plaintiff received 30 days loss of privileges. (ECF No. 1-1, PageID.34.) Plaintiff states that Defendant Leach requested a shower restriction, and the Deputy Warden approved it one day before the request was made, which Plaintiff contends is an indication of retaliatory motive.

On October 7, 2022, Defendant Binner falsified a misconduct on Plaintiff for allegedly stroking his penis in front of her while saying, "Mmm there she go." (ECF No. 1, PageID.5.) Plaintiff asserts that the video shows his cell was dark and that there were sheets on his bars because he was asleep during the pertinent time. However, Defendant Mohrman nonetheless found Plaintiff guilty. (*Id.*)

Plaintiff attaches a copy of the class I misconduct report to his complaint. (ECF No. 1-1, PageID.35.) In the reasons for finding, Defendant Mohrman stated that the cell front was not

entirely covered and that the officer could easily see into the cell and Plaintiff could also see her. (*Id.*) Defendant Mohrman elaborated that the officer is required to know if the prisoner in the cell is alive and breathing so she would have stopped and removed the cell covering had she not seen Plaintiff. (*Id.*) Defendant Mohrman noted that it was not logical for the officer to have included Plaintiff's comment unless she heard it, and that Plaintiff had reportedly positioned himself so that the officer would see him and he would see her. (*Id.*)

Plaintiff states that Defendants violated his First Amendment right to be free from retaliation, as well as his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

## II.    Motions to Appoint Counsel

Plaintiff has filed two motions to appoint counsel. (ECF Nos. 5, 7.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Therefore, Plaintiff's motions requesting the appointment of counsel will be denied.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment when they subjected him to false misconduct tickets and discontinued his medication. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d

531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

In this case, Plaintiff concedes that he was non-compliant with his medication regimen in that he sometimes refused his medication. Plaintiff merely asserts that his non-compliance was not significant enough to warrant discontinuation of his medication. However, as noted in the step II response to Plaintiff's grievance regarding this issue:

> Review of the prisoner health record reveals that multiple nurses have documented re: issues associated with grievant's restricted medication venlafaxine (Effexor), specifically their efforts to administer same. This documentation dates back to at least December of 2021 and addresses issues related to grievant's episodic refusal of the Effexor as well as the manner in which he handled it and his behavior towards the nursing staff. None of these notes were entered by "Nurse Meranda." On 7/18/2022 the psychiatrist reviewed grievant's medical record and determined that his compliance with the prescribed medication regimen was poor. The psychiatrist discontinued the Effexor on that date.

(ECF No. 1-1, PageID.31.) Plaintiff fails to allege any facts showing that he suffered any harm as a result of the discontinuation of his medication. Therefore, the Court will dismiss Plaintiff's Eighth Amendment medical claims for lack of merit.

Plaintiff also claims that he was given false misconduct tickets, which resulted in sanctions such as loss of privileges and segregation. However, "[r]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although Plaintiff was undoubtedly denied certain privileges as a result of his misconduct convictions, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human

10

needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### B.    Retaliation

Plaintiff asserts that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Defendant Meden

Plaintiff alleges that Defendant Meden discontinued his medication on July 18, 2022, at the behest of Defendant Meranda. However, as noted above, Plaintiff concedes that he was non-compliant with his medication regimen, which was the stated reason that it was discontinued. Moreover, Plaintiff's refusal to take his medication on various occasions was documented by several nurses, none of which was Defendant Meranda. Finally, Plaintiff fails to allege that he

suffered any harm as a result of the medication being discontinued. Therefore, Plaintiff's retaliation claim against Defendant Meden is properly dismissed.

### 2.    Defendant Meranda

Plaintiff contends that Defendant Meranda wrote a false misconduct on him for threatening behavior and had Plaintiff placed on top-lock after Plaintiff refused to pay her for his medication. Assuming that Plaintiff has a protected right to refuse to pay for medication, the Court notes that Plaintiff has alleged sufficient facts to show that Defendant Meranda took an adverse action against him which was motivated by a desire to retaliate against him. Therefore, Plaintiff's retaliation claim against Defendant Meranda may not be dismissed on initial screening.

### 3.    Defendant Schroderose

Plaintiff alleges that Defendant Schroderose reviewed the misconducts written by Defendants Meranda and Bressette with Plaintiff. Plaintiff states that Defendant Schroderose told him that he knew the misconduct written by Defendant Bressette was not right, but "so what." (ECF No. 1, PageID.9.) The Court notes that none of Plaintiff's allegations against Defendant Schroderose support a finding that he was motivated by a desire to retaliate against Plaintiff for engaging in protected conduct, or that he took any adverse action against Plaintiff at all. Defendant Schroderose neither wrote the misconduct, nor determined that Plaintiff was guilty of the misconduct. The fact that Defendant Schroderose did not care if the misconduct was false is irrelevant to a claim of retaliation. Therefore, Plaintiff fails to state a retaliation claim against Defendant Schroderose.

### 4.    Defendant Minthorn

Plaintiff alleges that Defendant Minthorn found Plaintiff guilty of the misconduct tickets written by Defendants Jeske and Binner. Plaintiff's complaint is completely lacking in allegations showing that Defendant Minthorn was aware of any protected conduct on the part of Plaintiff, or that his

decision to find Plaintiff guilty of the misconducts was motivated by a desire to retaliate against Plaintiff for engaging in protected conduct. Therefore, Plaintiff fails to state a retaliation claim against Defendant Minthorn.

### 5. Defendant Jeske

Plaintiff alleges that Defendant Jeske falsified a misconduct for insolence on Plaintiff on September 10, 2022, stating "I got your bitch ass." (ECF No. 1, PageID.10.) However, Plaintiff does not allege facts showing that Defendant Jeske was aware of any grievances filed by Plaintiff, or any other protected conduct on the part of Plaintiff. Nor does Plaintiff allege facts showing that the motivation for the misconduct was retaliation for any protected conduct. At most, Defendant Jeske's comment demonstrates a dislike for Plaintiff. Plaintiff fails to state a retaliation claim against Defendant Jeske.

### 6. Defendant Binner

Plaintiff alleges that Defendant Binner falsified misconducts on Plaintiff on September 20, 2022, and on October 7, 2022. Plaintiff's complaint is completely lacking in allegations showing that Defendant Binner was aware of any protected conduct on the part of Plaintiff, or that his decision to find Plaintiff guilty of the misconducts was motivated by a desire to retaliate against Plaintiff for engaging in protected conduct. Therefore, Plaintiff fails to state a retaliation claim against Defendant Binner.

### 7. Defendant Bressette

Plaintiff alleges that Defendant Bressette lied and wrote a threatening behavior misconduct on July 22, 2022, the same day that the warden pulled the misconduct which had been written by Defendant Meranda. Defendant Bressette stated, "You thought you was going to get away with it, we got her back." (ECF No. 1, PageID.9.) Plaintiff asserts that this was in reference to his grievance

on Defendant Meranda. The Court concludes that Plaintiff has adequately alleged facts which could support a retaliation claim against Defendant Bressette.

### 8.      Defendant Leach

Plaintiff alleges that Defendant Leach requested a shower restriction for Plaintiff, which the Deputy Warden approved one day before the request was made. Plaintiff asserts that this shows that there was some improper retaliatory motive. However, Plaintiff is incorrect. Plaintiff fails to allege any facts showing that Defendant Leach was aware of any protected conduct engaged in by Plaintiff, or that a desire to retaliate was the motivation for his request for a shower restriction. Therefore, Plaintiff fails to state a retaliation claim against Defendant Leach.

### C.      Defendant Mohrman

Defendant Mohrman found Plaintiff guilty of a class I sexual misconduct written by Defendant Binner on October 7, 2022. (ECF No. 1-1, PageID.35.) Defendant Mohrman is a hearing officers whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id*.; *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017); *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity

15

applies to actions under § 1983 to recover for alleged deprivations of civil rights). Therefore, Defendant Mohrman is properly dismissed from the complaint.

## <u>Conclusion</u>

Plaintiff's motions to appoint counsel (ECF Nos. 5 and 7) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Meden, Schroderose, Minthorn, Jeske, Binner, Leach, and Mohrman will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims against remaining Defendants Meranda and Bressette. Plaintiff's retaliation claims against Defendants Meranda and Bressette remain in the case.

An order consistent with this opinion will be entered.


Dated:   __April 17, 2023__                          /s/ Paul L. Maloney
                                                                 Paul L. Maloney
                                                                 United States District Judge